Mr. is it Tyco? Tyco your honor. Mr. Tyco. Good afternoon and may it please the court my name is Jonathan Tyco and I represent the plaintiff and the appellant in this matter. In McCravey versus Metropolitan Life Insurance Company the court held that the remedies approved of in that case were necessary because without the availability of those remedies and insurance it's the two Cigna entities your honor there's the Cigna holding company and one of their subsidiaries called Life Insurance Company of North America so I'll just refer to them jointly as Cigna to shorten my argument but that those are the two remaining defendants. You all settled with the employer is that right? That is correct. So did you get the life insurance benefits the equivalent of that? We did not. The specific terms of that settlement are confidential but it was less than the full amount of the death benefit. Okay. And so what what Cigna is seeking. Almost a big why but go ahead. I'm sorry what did your answer but I mean that's kind of puzzling but I'm sure there are reasons outside of what we need to know here. That that's not in the record your honor and like I said that we was a settlement it was it was it's the nature of a settlement that you sometimes don't get the full amount but in it but in any event the the point of the remedies that were approved of by the court in McCravey were to essentially prevent insurance companies from getting unfair windfalls when they retained premiums that had been paid to them for benefits that the employees thought they were getting but that under the insurance companies own interpretation of the plan the employees never had eligibility for and that's precisely the set of circumstances here in the district. I mean that's I think that's a good statement but is that what really happened here as I understand what was the role of the company here as I understand you the plan administrator did all the collecting did everything in the world on it and just simply sent it to the on the right or whatever the insurance company right? No that's not right your honor I mean as a factual matter there's no question that in fact there were unearned premiums that were transmitted to Cigna and they don't deny that they do take the position that they have no legal obligation to return those premiums or to pay the death benefits because they argue they are not an ERISA fiduciary and that's really what this either of them an ERISA fiduciary and they they are for two main reasons. So is the appeal about return of those premiums? Well the that's a remedies question under McCravey your honor if they are not fiduciaries though I would say then there would be. There's got to be more than just the return of the premiums while you were here today right? Well that's right your honor we we sought both return of the premiums and the death benefit of course but I would say the bigger issue in the case probably from Cigna's perspective is the premiums. This case was brought as a class action we never got to that point in the case obviously but the real sort of fundamental question here is does Cigna have the right to retain what it knows are unearned premiums or is there some legal obligation? How does it know that they were unearned premiums? What evidence is there that Cigna knew it was receiving premiums for coverage that didn't exist? There that well let me start by saying there has been no discovery in this case so all we know is what's in the record based upon the documents that were put in. Okay I know but you just said that they knew that they were receiving. That that is our allegation. It's an allegation so that they can't know it if it's an allegation. And there is evidence in the record that we point to so I would point to a number of key facts. One there is evidence in the record that exactly what happened to Mr. Gordon had happened to employees of other participants in the in these group policies before so that this was a letter that had one individual's name in there and you don't know whether that was a participant or they stuck in their buddy from fantasy football in that letter. No we do know that it was a participant your honor. That that is how do you know that there's more than one and all that stuff? Well we know of two right Mr. Gordon and Mr. Hungerford and and there is evidence in the record that Mr. Hungerford was an employee of a company that was enrolled in the in a factually of those two. We know through. How does that tell you that the insurance company knew they had unearned premiums with respect to Mr. Gordon? Well they certainly take the position that they did not know that with respect to Mr. Gordon specifically until Mrs. Gordon made her claim for death benefits. But the knowledge element really is only relevant to our count to claim for non-fiduciary participation knowing participation in a fiduciary breach of duty. Under count one the primary question is simply if they had unearned premiums which we now know they did with respect to Mr. Gordon. They don't deny that as a factual matter with respect to the name claim if at least they clearly did receive and retain unearned premiums. So the question under count two the primary question is given the fact that Cigna had control of those unearned premiums, did they have fiduciary duties or were they a fiduciary with respect to that portion of the plan? That's two different questions. I mean if they're a fiduciary and you have an ERISA claim. Correct. But if they're not a fiduciary then you have to go in under this sort of murky law that comes out of some of the other Supreme Court decisions that have all prohibited transactions which this is not. Right. But just to come back to Judge Thacker's question, what is the evidence that they know? And I just wanted to point out that the issue of their knowledge is primarily a count two issue. Our claim under count one that alleges that Cigna itself was a fiduciary does not hinge on whether or not they knew. Your best evidence is Mr. Gordon's claim was denied and there's a letter floating around somewhere that has another gentleman's name in it. That's your best evidence. And there's more, Your Honor. That's just the beginning. Now remember the knowledge element under count two is a new or should have known knowledge. It's actual or constructive knowledge. So if we could build a record that Cigna had noticed that this was a recurring problem with respect to the group policies. You asked to conduct discovery with respect to Mr. Gordon and the building so you could build a record? Absolutely, Your Honor. That was our argument under Rule 56D. We submitted the necessary declaration under Rule 56D and the district court refused to allow us to conduct any discovery. I thought the insurance company offered to let you do all kinds of discovery and you turned them down. Well there was a negotiation over the scope of discovery, Your Honor, and if you want to get into the details of that, there's a document in the record that is actually a red line back and forth. We were negotiating over a consent order that would have allowed us to take discovery. And the fundamental disagreement is exactly this one that we're talking about. They wanted to give us discovery that was going to be limited solely to what they knew with respect to Mr. Gordon himself. We were asking for discovery that was a little broader because we were trying to build a record that would support a constructive knowledge argument. We ultimately didn't get... That would get you into a class action case. No, it's not just for the class action, Your Honor, because the constructive knowledge argument would apply to Mrs. Gordon's claim under Count II, her personal claim. Well, why wouldn't you have taken this discovery, got out of it what you could, and then if that wasn't sufficient, then come back with your Rule 56? Well, I mean, Your Honor, we had... That goes through the negotiations. We had a hearing date that was coming up in front of Judge Titus. These negotiations had sort of reached an impasse, and so we were faced with a strategic call. Do we just try to win on the motion and go forward, or do we take what we consider to be inadequate discovery? We did ask Judge Titus under Rule 56D to allow us the discovery that we thought we were entitled to, and he declined. He said we were entitled to no discovery, and that's really the ruling that's on appeal. You had a better argument if you took the discovery they offered to you and then came back to the court and said, look, they gave us this. This doesn't do what we need to do. Here's my new Rule 56D affidavit. I mean, you can make whatever judgment call you want, but it just strikes me as very odd that you proceeded in this way. I guess what I would say to that with due respect is that that is a golden hindsight position. I mean, obviously now, where we are, having had the District Court rule against us on what we thought was a little bit of a Hail Mary summary judgment motion... The District Court... You're saying the District Court said that you were entitled to no discovery? Zero discovery. The District Court on anything. There was no scheduling order ever issued under the local rules of the District of Maryland were prohibited from taking discovery until the District Court issues that scheduling order. The judge never issued a scheduling order. So by not issuing the scheduling order, that's why you're saying the District Court said you were entitled to no discovery. The District Court didn't actually... No, he actually ruled that because in opposition to the summary judgment motion, one of our arguments was that we were entitled to discovery under Rule 56D. We submitted the necessary declaration, and as part of his ruling, he actually does say, and I can give you the citation to that if you want, Your Honor, but he does actually say in his ruling that he's considered that argument and rejected it, and we're not going to get any discovery. So this is an unusual procedural posture. This was essentially trial by declaration with no opportunity for discovery. So we believe that if we had been given the opportunity for discovery, we might have been able to build a record on constructive knowledge. And all that Rule 56D says is that if a party has not had an opportunity to do discovery that might be relevant to the motion, that the District Court should allow that discovery to take place before ruling on the summary judgment motion. The District Court did not do that here. I mean, what is up on appeal is not the results of our negotiations with CIGNA. We might, you might criticize us for not having taken their, what was their best offer that we didn't think was an adequate offer, but that's not really the judge's decision to allow us no discovery. So tell us in terms of your ERISA-based claim, what do you say is a plan asset that would make LI&A a ERISA fiduciary? The plan assets were the amount of the premiums that were transmitted to LINO or CIGNA that were provided. Why is that? Because this is just a group term insurance policy plan. So all that a participant can get out of it is whatever insurance benefits they're entitled to. I mean, they don't have a right to any other asset. But the case law clearly demonstrates that where an employer pays money to a third party, like an insurance company, in order to obtain a benefit for its employees, if that third party doesn't use that money to actually provide that benefit, then the unused portion of that money, and that's what we're talking about here, not all the money, some of the premiums went to actually buy insurance. There's no question about that. And Mr. Gordon received, Mrs. Gordon received some benefit. But the portion that we're dealing with here is sort of an obviously segregable portion. Their position is that the $150,000 of death benefit that was subject to what they call the insurability requirement, that's the insurance that they claim Mr. Gordon never had from the beginning. And yet they were receiving premiums over an extended period of time for that insurance benefit, and yet never providing it. And what the case law says, and you can look at Hancock Mutual Life Insurance Company out of the Supreme Court, the Hylex decision in the Sixth Circuit, Chao versus Day in the D.C. Circuit, those are the three cases I think are probably the best for us. But what those cases say is that that unused portion of the premium, the portion of the premium that didn't actually buy any insurance, remains a planned asset because it was given to the insurance company in trust for the purposes of providing an insurance benefit. And if they don't, it's not their money. They haven't earned it. They have to either, they have to give it back. I mean, really. If they have no fiduciary duty, if that's... If you got what you call the unearned premium back, which is sort of what happened in the Moon case, that's your case? Well, that would be one of the remedies because we're dealing here with a beneficiary. Well, so let's back up. Let's say Mr. Gordon had realized that this was occurring before the time that he passed away. At that point in time, he would have a right, we say, to ask Cigna to return the premiums to him. And that just as a matter of common sense, of course, Cigna should have to do that. I mean, his deal, Mr. Gordon's deal, was with the employer who was taking the money out as the plan administrator and then sending it to the insurance company. So it seems like Mr. Gordon's claim would be against his employer, not against the third party, that the employer might have a claim against the third party. Well, there's no question that he has that claim against the employer as well, right? But the fiduciary duties follow the plan asset. So if those unearned premiums are in fact a plan asset, whoever is in control of them, that's what the statute says. That's what the definition of fiduciary says. If you are in control of a plan asset, then you are a fiduciary with respect to that asset, not in general, but just with respect to that asset. And all that means, I would say, is just the common sense point that if the insurance company has unearned premiums, and let's say the employer says, no, I'm not going to give it back to you, or the employer goes bankrupt, or the employer, for whatever reason, can't return the premiums, that the insurance company who actually has the money and has profited from it should have to give that money back. And how much are we talking about here? Well, in Mr. Gordon's case, it was over $1,000. He was employed there for a relatively short period of time because he became ill within two or three months after he started employment. But if you look, for example, at Mr. Hungerford, he was enrolled in this plan for 15 years. You're only here for Mr. Gordon. Well, but my point, Your Honor, is that these unearned premiums, and the reason I'm making this case as hard as they are, is because the total amount of unearned premiums that Cigna is sitting on could be astronomical. And that is money that was stolen out of the paychecks of employees. And some of those employers may be long gone. And as a matter of common sense, there's no reason for Cigna to have that money. They did not earn it. Why would you ever want the legal rule to be that they get to keep that money? So you are talking about a potential class action. That's really what you're after. Well, our case was absolutely alleged as a class action. We never got to the Rule 23 stage, so we don't know whether we would be certified. But that's absolutely right. And that's actually what I went back and read what the district court did with regard to your discovery. It appears to have denied you what it's called full-throated discovery into all kinds of potential cases based on the one letter, not to get into a fishing expedition. It doesn't indicate you couldn't have gotten discovery just on Mr. Gordon. I mean, I see that I'm about to run out of time, Your Honor. But you have to look at our actual 56D declaration and what we were actually asking for. And we did break it down for the judge. We said there are certain categories of information that we think are relevant to the summary judgment motion. We were focused purely on the issues that were raised in the summary judgment motion. And under 56D, the court could have given us that discovery, or the court could have made a determination that there were certain issues that we should get discovery on and not others. But certainly, if you look at this issue of constructive knowledge, we should have been allowed to conduct discovery to build a record on constructive knowledge. And we should have been able to build a record to make the argument that Cigna was a functional fiduciary, an issue we haven't yet talked about. But those were the two main factual issues. Those are fact-intensive issues. And in a normal process, the district court would have been considering this motion at the end of discovery after we had already gotten it. You were representing whom? The plaintiff. Who is the plaintiff? It's Mrs. Gordon and the estate, because she's also the administrator. You don't represent the company. We don't represent the company. No, no, no. The company, we sued the company. I understand that. My point is that. And so part of the settlement, I mean, if the premiums were given to the company, why couldn't Mrs. Gordon get them from the company? Well, maybe she could have, Your Honor. But that doesn't... But she never gave it, and her husband never gave any money to the insurance company. He gave it to the company. And if you get it from the company, then why would the company then not have the right to go to Cigna and says, give us our money back? You didn't provide us under this group policy. What's that? Your Honor, if we hadn't sued with UCG and UCG's counsel was standing here in front of you, I have no doubt that that's exactly the argument they would make. They would say, we weren't the fiduciary with respect to all this. Cigna was, and we have the right to sue Cigna for that money. I'm bringing action on behalf of Gordon. We're looking at Gordon. Gordon is seeking to get back at least his estate, that which is due them. If it's given to this company, where clearly it's the plan administrator, seems to fit very neatly there, and you settle with them, but you keep part of it open so you can go after the company, the insurance company, and you're saying the problem is they won't give back the insurance premiums. Have they given them back to the company? We do not know that, Your Honor. All we know is that in their course... But what if they have? And have you asked the company for them? Well, here's how that played out, Your Honor. When Mrs. Gordon asked for the death benefit, she thought she was going to get $300,000 in death benefit. We got that part. We know about the $150,000 and all of that. We know about how it all happened. We also know that this company went out of its way and says, hey, it's our fault. We did all this. We didn't do all these things that were supposed to be. We also have the trial judge basically saying that Cigna and Atlanta are not fiduciaries. Well, that's the issue on appeal, Your Honor. Well, the issue on appeal, but when you look at what's going on here in terms of their position and what they're doing as a claims fiduciary type situation, which describes their duties, the whole point of litigation, I think, is pretty clear what you are trying to do. I think that is very clear. It may not become clear otherwise, but it's very clear. I started out to ask you, are you really interested in just getting premiums for Mr. Gordon? No, you're not. That's not what this case is all about. You're trying to go and use the Gordon estate, not settle fully with the company, so you can preserve part of the action against the insurance company, and now come in and conduct discovery and open up a whole venue for something else. Well, Your Honor, that's thinking way down the road. That's exactly where you are. But I mean, the key issue right here today for Mrs. Gordon is whether or not she has a claim for anything, including the death benefit against Cigna. I mean, Cigna is in exactly the same position that the insurance company was in the McCrave case. Why shouldn't she be allowed to seek the remedies that work? I think she has a way to do it, but something is telling me this is reaching there. I'm thinking, you're right, Cigna can't get away with just holding premiums, but I'm thinking that employer is the one, if they paid and says, well, we sent you this money, you didn't provide this premium because it's a premium, it's not an asset. I don't know if there's any evidence it's in a separate trust there for a line of whatever this is. So you didn't give us our premiums back. The company didn't do it, but the company didn't give us back the Gordon estate. Let me just give a ten-second response because I know my time is up. I mean, obviously, we're representing the plaintiff. We sued both. Fiduciary duties are not a either-or. They could both have had that duty to our client. And when you're representing a plaintiff at the beginning of the case, you allege whatever claims you can allege against the defendants you think you have legitimate claims against. We think we have legitimate claims against both. The only issue that's in front of this Court is whether we have claims against it. Thank you, Your Honor. Thank you very much. Mr. Buran. May it please the Court. Your Honor, I think the arguments that we've heard so far this morning are essentially asking the Court to conclude that Lina isn't responsible just for ensuring the payment of benefits under the policy. Did you ever give the premiums back to the employer? What happened, Judge Winn, is when we discovered that there were erroneous overpayments, during the claim process, and the evidence is clear in the record on that, we directed the participant to go to the plan administrator, the employer, for purposes of obtaining the premium. The plan administrator is always the person responsible for communicating with the employee. Under the plan document, it makes clear that the plan administrator is actually the employee's agent for purposes of dealing with premiums and the rest. And so that's entirely appropriate to say, okay, it appears that there may have been overpayments. Obviously, Lina doesn't have all of the payroll data and all of the information that would tell us exactly how much the overpayments were. I assume you consider it to be not really relevant if you did say go back to the company and the company gave them the premiums and you really didn't send it back to the company. That's between you and the company. Exactly. So if Ms. Gordon had gone to the company, she actually did, before the lawsuit, after we sent the claim denial and directed her to go to the employer, her attorney sent a letter to UCG asking a number of questions. We've called that the pre-suit letter. In our brief, UCG responded to the pre-suit, sent the pre-suit letter. I'm sorry. Didn't the company, did the company offer to give her back those premiums in lieu of this coverage? That's exactly right, Your Honor. Well, she didn't want that. She wanted the coverage. Right. And I think, I assume the decision was made that we don't want to take the premiums. So is there, is there an argument that if you accept settlement for any part of the coverage, you've gotten a benefit? The question is to what, have you gotten it to the full extent of your premium is one question. But it seems to me when you accept a benefit and if it's a settlement for coverage, do you also get the premiums back? I would think not, Your Honor. That seems like, I don't think there's any circumstance where the plaintiffs would even argue we're entitled to a full recovery of the benefit and on top of that we get the premiums. How much of a difference was it that they miscalculated the age of Mr. Horton? I believe that was, that roughly amounted to about $30 in overpayments and then I believe the additional $140 or so related to the excess, to the coverage issue. And so obviously, you know, in some ways the employer sort of did the best it could to try and correct the situation after the fact by saying here's how our administration works. They answered all the questions Gordon's lawyer presented to them. They said we use an online system. It's called Ceridian Self-Service. We use it for all of our benefit plans. What we do is we tell our payroll department you can approve basic coverage automatically when it comes to coverage above the guaranteed issue amount. We provide the evidence of insurability application. As the plan administrator, they're responsible for doing all those things. Let me ask you one last question. Sure. If the company had paid the full amount, $150, would we be here today? If the company had paid the full amount? Yeah, just paid it, whatever it was asked for. Maybe that's a question for Mr. Tico. I would think there would be no reason for us to be here today because, of course, there would be a full recovery, and we assume that there's been some substantial recovery, but obviously we're still litigating the case. And I think what the heart of the plaintiff's claim is that it's not just UCG who should be responsible for this, even though there's no dispute in the record that UCG was the plan administrator and the errors that were made that this case is all about happened on their watch. There's no claim that LINA, in its role of deciding individual claims as they came through, made any kind of error or breached any duty in that regard. For example, there's no allegation that we misapplied the terms of the plan. I think everyone agrees that coverage didn't exist here under the terms of the plan. Well, we don't have it in the record, but unless it's different from every other settlement agreement I've ever seen, when there was a settlement done, the plaintiff had to release any and all rights, claims, signs, et cetera, against the company, which would seem to cover both the courses of speculation, any rights to the proceeds, or any rights to discouragement of premiums. As to the company, I'm sure the settlement agreement provides that. I don't know what specifically it provides. I know that the order or the motion that was submitted to dismiss the claims against UCG made it very clear they did not intend to dismiss the claims with respect to the insurance company. I think what, at the end of the day, in terms of the premiums, that's not at all what this case is really about, because if it were, we wouldn't be here. You'd send the premiums back to the company, wouldn't you? Of course. If the company, we send the employee to the company to get the premiums. Why didn't you? When they brought up the word premium, why didn't you just get rid of that issue and say, well, we sent the premiums back to the company? We attempted to do that by notifying Ms. Gordon to talk to the employer to get the premium. And then what would happen in the ordinary course, presumably, is the employer would say, we've repaid this, we've refunded this premium, here's the total amount, we'd like you to refund us. And that's the way it ought to work. We never got to that point, of course, because the premium wasn't accepted by Ms. Gordon. Instead, we've litigated this case. And I want to point out, I've made some mention of the pre-suit letter because I think it's significant. And there was a lot of discussion in the arguments so far that, well, there was no opportunity to take discovery in this case. And we waited six months before filing for summary judgment. The plaintiffs never asked us for any discovery. And, of course, there was no scheduling order, but they can always try to serve discovery and we can agree to respond to it. But what we did is we filed the motion and we immediately reached out and said, we understand there may be some areas where you want to take discovery. And after the negotiations that we discussed that Mr. Tico mentioned, we offered full discovery over the course of three months, a little bit more than three months, actually. Any communications between Gordon and UCG, any communications between Lina and UCG about Mr. Gordon, any communications with Lina and Mr. Gordon, any documents he received, the enrollment process, the premium collection process. I take it you do realize they want a little bit more discovery than that. I think where we reached disagreement. And a class action by just talking about Mr. Gordon. Right. And that's what we tried to make clear, and I think the exhibit that Mr. Tico mentioned shows, we tried to provide all the discovery you could want with respect to Mr. Gordon. But what we didn't want to do is get into the phishing expedition, where they wanted all the claim files for UCG. They wanted all of the enrollment forms. They wanted all of the evidence of insurability applications. That was to seed the class action theory. I understand that. But what we had moved for summary judgment was with respect to Mr. Gordon. And we offered all of the discovery you could possibly need to see if there was an issue of fact on those questions. And they made, as Mr. Tico acknowledged this morning, they made a strategic decision. They thought our motion was a Hail Mary. It would never be granted. So rather than take the discovery under the sort of bird in hand analysis that you mentioned, Dr. Jajaji, would be take the discovery. If you get to the end of the day and you've done all that discovery and you think that there's still more that needs to be pursued, then file your 56D motion. They didn't do that. And let me also point out that when we moved for summary judgment, UCG is a co-defendant. And our position on summary judgment is we are not the responsible fiduciary. Our co-defendant is. UCG is. They didn't do, they did not respond to that at all. They didn't ask for leave to address any of the facts we asserted. Is it the UCG or the plaintiff? UCG, the co-defendant. I would think that if they disagreed with anything we described in our motion regarding the delegation of fiduciary responsibilities under the plan, they would have said so because obviously it affects the scope of their potential liability. And the McCravey case was discussed this morning. And it's an important case we all have to think about. But it doesn't have application in this particular circumstance because this case involves the antecedent question that wasn't addressed in McCravey. And that is, is the defendant a fiduciary in the first place? The insurance company in McCravey, it was taken as a given, was the plan administrator, full stop. In this case, UCG is the plan administrator. There's no dispute about that.  So the McCravey case is relevant to this case in particular, but it's relevant as to UCG's responsibility, not to Lina's responsibility. Two years after McCravey was decided, this court addressed the Lewis case, which also involved Lina. In that case, you had the exact same delegation of responsibility and almost a similar type of error by the employer. And what the court held is that the breach of fiduciary duty claims against the insurance company failed because the insurance company didn't have responsibility over the enrollment process. It didn't have to double check that all the employees were properly enrolled in the plan or that all the premiums were correct. It simply wasn't responsible for that activity. Rather, the employer was. And with regard to that decision, what we know is that there is a responsible party. We're not sitting here saying Ms. Gordon is out of luck. There's no one from whom to recover. There is. There is a fiduciary, a plan administrator, a party who has acknowledged they're a fiduciary and who, before the lawsuit was even filed, acknowledged the errors that it made and offered to return the premiums. So there isn't a situation here where someone isn't going to get a recovery. I want to talk about the plan asset issue because I think it's interesting in Count 1. And what Mr. Tico mentioned this morning is that the knowledge element in Count 2 has no application to Count 1. So think about what he's saying. What he's saying is anytime anybody comes into possession of a plan asset, whether they know it or not, they automatically become a fiduciary and they're automatically liable insofar as they don't immediately detect that fact and correct it in some way. And we don't even have to get into that sort of analysis because ERISA resolves the plan asset question for us. In Section 1101B, it explains that when an insurance company like Lina issues an insurance policy, a guaranteed benefit policy like the policy here, there's no dispute about that. The asset is the policy itself. Nothing in the general account of the insurance company is a plan asset. Now, plaintiff's theory would turn that provision on its head and say, well, that's only true if the insurance company makes a determination that none of the premiums it received is the result of some mistake along the complex administrative path. So it would have to look at the same records that the plan administrator had. It would have to look at all the wage information that the administrator had to make sure that there were no mistakes because if there was a mistake, then now we have plan assets and we're liable under ERISA because we have those plan assets. That would make it impossible to ensure self-administered plans like this one because we would have to, in effect, act as a shadow administrator for the plan. It would have two negative effects. One would be that it would disincentivize employers or plan administrators to do a good job in the administration of the plan. Is this the guaranteed benefit policy exemption that you're discussing? Yes, it is, Your Honor. And what that tells us is there just is no plan asset here, and so there can't be fiduciary responsibility or fiduciary status on the part of the insurance company because it receives premiums. With respect to, as I was saying, with respect to the detrimental effects of plaintiff's theory, you would have a situation where now the insurance company does have to take on those sort of administrative responsibilities, and that works to the disadvantage of employees because, obviously, there's no free lunch. There's going to be higher premiums as a result of those extra burdens the insurance company would have to take on, and that's the sort of situation that this Court addressed in Coleman. In Coleman, the Court said, look, we can't treat the fiduciary definition of ERISA in a way that would sort of blindside parties who have no reason to believe they're a fiduciary. They are a fiduciary through some sort of creative interpretation of the statute. Here, you would have to essentially read the guaranteed benefit policy provision to mean almost nothing to accept plaintiff's theory that the insurance company held plan assets simply because it was receiving premiums. And on this issue, I think the Moon case is relevant as well. There you had an employer that was not the plan administrator, so it was like Lina. It received premiums that were for coverage that didn't exist, and this Court held that that did not trigger fiduciary responsibility. The plan in Moon was a fully administered plan, meaning that the insurance company did everything. Here, we had a self-administered plan. The insurance company in Moon had to give the premiums back. The insurance company in Moon actually wasn't a defendant. It was the employer that was arguing before this Court, and the employer agreed to give the premiums back. And, of course, the employer in this case has already agreed and I assume has given more than the premiums back through the settlement. So we think the Moon decision also forecloses this plan asset theory that the plaintiffs have asserted. If there are no – I can address some of the other issues that have been raised in the brief. The plaintiffs have made sort of a functional fiduciary argument to say that, well, maybe Lina took over UCG's responsibilities in some way. As to that, I would say there's just no evidence in the record at all to support that theory. And, in fact, UCG's on record is saying we were responsible for the administration. All right. Thank you very much. Mr. Tyco, you have a little time left. Thank you, Your Honor, briefly. So the ruling that we seek would not impose these sort of undue administrative burdens on Signal. All we're saying is that if, in fact, they are holding unearned premiums, money that they did nothing to earn and that actually belongs to the employees, they should have to return it. Obviously, the question of whether they know they have those unearned premiums or whether anybody knows is a different question. Nobody's going to ask them to return unearned premiums that nobody knows about. But if they actually know about it or if they had reason to know, should have known constructive knowledge, then they should return those premiums. That's all we're saying. That's not a big administrative burden. Now, the fact that – When would they know about it in a case, let's say Mr. Gordon's case here? Yeah. When would they know they have unearned premiums? Well, with respect to Mr. Gordon specifically, they knew it when Mrs. Gordon asked for the benefits. If we look at similar situated cases, the class you're seeking, is that a class of people who are in the situation of Mr. Gordon's estate where they find out, well, something wasn't completed and, therefore, you're holding premiums and not giving me the benefit? Is that the class you're talking about? Well, I mean, technically, we, I think, sought two sort of subclasses. One would be a class of beneficiaries that are in the position of Mrs. Gordon and one that would be in the position that – Whoever, if you've got employees who are there working, they haven't completed all of the conditions to receive insurance, but, nonetheless, and they won't get it if it's what you're talking about. But I'm trying to figure out when would, if you're trying to say that Cigna knows this and they're holding them, under this scenario, I don't, was there any evidence they knew anything about these premiums before the claim was actually made? We were never given discovery on that issue, Your Honor. That's exactly why we should have been given discovery. Well, Mrs. Gordon and the state, was there any evidence that they ever knew about that before? We don't know because we were never allowed to ask that question of anybody. The sole evidence in the record that they don't know is one paragraph of a declaration of one of their employees who says, and she was, we don't even know what her job title was, but she was the one who signed the declaration and said, we didn't know anything about Mr. Gordon's premiums. We were not even allowed to depose that witness. And if you want to get into this question of the back and forth on the discovery. I'm trying to figure out how they would know. Let's figure this out. As I understand. Here's how they would know. Well, let me ask you this. Yeah. We know the scenario. Mr. Gordon's working there. He can get this excess insurance. Right. And he goes and pays this additional premium. Ultimately, it's determined by his estate. There's a sheet of paper missing. It's very simple, Your Honor. Let me explain. Let me finish. I get that. You've got to keep it simple for me. I know it's simple for you. All right. So you missed that little piece of paper right there. Is that little piece of paper something that Cigna already had or they wouldn't pay it until they get that piece of paper? Here are the two facts we were trying to figure out. Give me an answer to that so you can help me out. They clearly knew that they never got the application because there was no application in their record. We were trying to get to discovery to determine whether or not they knew that they were supposed to provide the full $250,000 in insurance. If they knew that and they knew that they had never received the application, then they knew that he was paying premiums for insurance he didn't have. They were clearly not the plan administrator. They were not designated as the plan administrator. That doesn't mean they're not the fiduciary. But with respect to this question, they were the underwriters, so they were the ones that got these applications and determined who was eligible. UCG did not make that determination. Cigna did. And Cigna was clearly the claims administrator. So all of the information that would have shown them that Mr. Gordon was paying for $250,000 of insurance but only had $150,000 of insurance, they may well have had that information. We were never allowed to get that discovery. I mean, these are big issues, and if nothing else, these issues should be decided on a complete factual record, Your Honor. Thank you. Thank you very much.
judges: G. Steven Agee, James A. Wynn, Jr., Stephanie D. Thacker